UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**CASSANDRA GESKE,**
on behalf of herself and
all others similarly situated,

        Plaintiffs,                                        No. 1:19-cv-5170

v.

**PNY TECHNOLOGIES, INC.,**

        Defendant,

_____

**CLASS ACTION COMPLAINT**

    1.    Consumers, as a result of the modern lifestyle, are increasingly dependent on smart phones, tablets and laptop computers—portable electronic devices ("PEDs"). PEDs give consumers immediate access to information and instant communication with colleagues, friends, and loved ones.

    2.    Like any electronic device, PEDs require power. Consumers must periodically recharge their PEDs, which may be difficult if no outlet is available.

    3.    To solve that problem, technology companies like the Defendant PNY Technologies, Inc. ("PNY") market and sell portable chargers, also known as power banks.

    4.    Power banks are small, portable power sources that connect to and charge consumers' PEDs. Power banks can be charged at home and then taken on the go. The following shows an example of a power bank charging an iPhone.[1]

---

[1] PNY ID10400, https://www.google.com/search?q=pny+power+pack+charging+phone&rlz=1C1HIJC_en US827US827&source=lnms&tbm=isch&sa=X&ved=0ahUKEwix8Prus-XiAhUNTawKHaj-D8AQ_



5. A power bank's electrical charge capacity can be measured in milliampere-hours ("mAh"). A power bank with a higher mAh has an enhanced ability to recharge PEDs compared to a power bank with a lower mAh—in short, it promises to deliver more "juice."

6. Power banks are not fashion items or status symbols. Consumers do not generally buy power banks for intangible factors such as the products' looks, styling, or other soft features. Power banks are not usually serviced or repaired once sold; there is no significant relationship between the consumer and the company after purchase. The main point of buying a power bank is to have the ability to get more power.

7. Accordingly, consumers prefer and are willing to pay more for power banks with a higher mAh.

8. Technology companies are aware of this. One such company is PNY. PNY markets and sells power banks hereafter referred to as the Products ("Products").

9. PNY is a key player in the power bank market. The market generates more than $15 billion in sales each year for the industry as a whole.

---

AUIESgC&biw=1276&bih=572#imgdii=spK5ha1UALan9M:&imgrc=ELI2eP408X4ogM: (last visited June 12, 2019).

10. For profit and a higher market share, PNY exploits consumers' preferences for power banks with higher mAh. PNY intentionally deceives consumers by misrepresenting the amount of power its Products can transfer to PEDs. PNY advertises its Products as delivering an mAh capacity greater than its Products are able to provide.

11. Plaintiff Cassandra Geske relied on PNY's misrepresentations when she bought one of PNY's Products: the PowerPack 5200. PNY advertises the PowerPack 5200 as having 5200 mAh; however the PowerPack 5200 never could or did have a 5200 mAh capacity. As a result, Ms. Geske paid a premium for one of PNY's Products that did not work as represented and warranted.

12. Ms. Geske brings this proposed class action, individually and on behalf of classes of similarly situated consumers, against PNY. Ms. Geske seeks redress for PNY's unlawful, unjust, unfair, and deceptive practices in misrepresenting the capacity of the Products and violating state law during the applicable statute of limitations period.

## PARTIES

13. Plaintiff Cassandra Geske is an individual consumer who, at all times material, was a citizen and resident of Elgin, Illinois.

14. Defendant PNY Technologies, Inc. is a New Jersey corporation with its principal place of business at 100 Jefferson Rd., Parsippany, New Jersey. Defendant markets and distributes the Products from New Jersey throughout the United States.

## JURISDICTION AND VENUE

15. This Court has specific personal jurisdiction over PNY because this action arises out of and relates to PNY's contacts with Illinois. Ms. Geske lives in and purchased the

PowerPack 5200 mAh in Illinois. PNY has advertised and marketed within Illinois, sold products in both brick and mortar stores in Illinois and through the wires and mails and via the Internet. PNY knowingly directs activity into this state with the intent to engage in business interactions and has in fact engaged in such interactions.

16. This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), otherwise known as the Class Action Fairness Act ("CAFA"). In this case, the proposed plaintiff classes are comprised of at least 100 members, Cassandra Geske is a citizen of a State different from PNY, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this District. Ms. Geske resides in and purchased the PowerPack 5200 in this district and incurred losses in this district. PNY has marketed, advertised, and sold the Products in this district.

## DETAILED ALLEGATIONS

**A) PNY is a Global Technology Company that Markets its Products by Emphasizing their mAh Capacity.**

18. Established in 1985, PNY is a global technology company with twenty locations throughout North America, Latin America, Europe and Asia. PNY's product partners include HP, Lego, NVIDIA and Polaroid. PNY proudly boasts it has over 30 years of business experience serving customers.[2]

19. PNY manufactures, markets, and distributes for sale nationwide to consumers a number of models of power banks. It does so by prominently representing the Products'

---

[2] PNY *Our Story*, http://www.pny.com/company/about-pny/our-story (last visited June 7, 2019).

capacities as measured in mAh. Unfortunately for consumers, testing has shown the Products' actual capacity is substantially lower than what PNY represents.

20. By deceiving consumers about the Products' capacity as detailed herein, PNY is able to sell more of, and charge more for, the Products than it could if they were labeled accurately. Further, PNY is incentivized to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

21. All of the Products are marketed, sold, and advertised in a substantially similar manner, and there is no non-trivial difference amongst the models other than the differences in purported capacity.

22. PNY makes prominent representations about the Products' mAh on the packages such as "5200mAh POWERPACK." For example, the following photo shows the packaging for the device Ms. Geske purchased.



5

23. PNY draws attention to its Products' mAh by placing the mAh rating right in the name of the Products, and by prominently displaying the mAh rating on advertising materials and the product package.

24. On the Products themselves, PNY promised and warranted that they had a specific capacity. For example, the device Ms. Geske purchased is pictured below.



**B ) PNY's Products Cannot Deliver the Full mAh Amount to PEDs as Advertised.**

25. PNY knew at the time it sold the Products that the Products' true capacity was substantially less than what PNY represented.

26. In very basic terms, the Products consist of an internal battery cell (or series of batteries cells) and a circuit board that controls the technology. The Products' circuit boards convert the internal batteries' charge to a voltage that PEDs, like cell phones, can accept.

27. The Products then send the voltage to the PEDs to increase the PEDs' battery power.

28. To convert and distribute the power from the Products to the PEDs, the Products take power from their own internal batteries. Running the internal circuit board and converting power for charging PEDs' is a process that uses as much as 30-40% of the internal cells capacity. On information and belief, Defendant bases its purposed mAh capacity not on the capacity of the Power Bank itself, but instead on the capacity of the internal cells. The Defendant's Products are incapable of providing the full advertised and rated capacities.

29. Reasonable consumers such as the Plaintiff would read the advertised mAh and would expect and understand that the Products actually have that capacity, not that they are incapable of actually delivering on that promised capacity.

30. Because of the process described above, PNY knows the Products are technologically incapable of delivering the amount of mAh Defendant claims in the product name, in advertising for the Product, and on the Products and their packaging.

31. Plaintiff hired an experienced and reputable outside laboratory to perform tests on the specific model of PNY battery she purchased (PowerPack 5200), as well as on the 1800 mAh model of another PNY product. These tests were done in accordance with recognized engineering standards.

32. Unfortunately, the lab test results show that 100% of the PNY Products tested do not measure up to PNY's claims. The outside lab found that PNY's Products consistently failed to provide the output capacity PNY advertised. Test results for the two PowerPack 5200s (the same model Plaintiff purchased) the lab tested are below.

| Capacity Represented (in mAh) | Actual Capacity (in mAh) |
|---|---|
| 5200 | 3399 |
| 5200 | 3522 |

33. Testing of two PowerPack 1800s revealed similar shortfalls in capacity.

**C) PNY Deceived and Made False Representations to Ms. Geske and all other Consumers about the PowerPack 5200's mAh Capacity.**

34. In or about February 2018, while in a Meijer store in Illinois, Ms. Geske saw and relied on PNY's mAh representations about the PowerPack 5200.

35. On PNY's package, PNY said that the PowerPack 5200 had "5200 mAh" capacity.

36. Ms. Geske purchased the PowerPack 5200.

37. After purchasing the PowerPack 5200, Ms. Geske was disappointed to find she was forced to recharge the PowerPack 5200 more often than she expected.

38. Through her experiences and because of the lab testing, Ms. Geske is now aware that the PowerPack 5200 was not capable of delivering 5200 mAh.

39. Plaintiff, like any reasonable consumer and member of the putative class, would not have purchased the Product, or would have paid less, had she known the truth about its mAh capacity.

40. On June 7, 2019, Ms. Geske's counsel sent PNY a letter informing them of the harm caused by PNY's deceptive acts.

41. PNY has not remedied the situation for Ms. Geske or the classes that Ms. Geske represents.

## CLASS ALLEGATIONS

42. Ms. Geske brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and similarly situated individuals within certain States (the "Multi-State Class"), defined as follows:

> All consumers who purchased the Products in Alaska, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Illinois,

> Maine, Massachusetts, Michigan, Missouri, Nebraska, New Hampshire, New Jersey, New York, Rhode Island, Vermont, Washington and Wisconsin.
>
> Excluded from the Class are any of PNY's officers, directors, or employees; officers, directors, or employees of any entity in which PNY currently has or has had a controlling interest; and PNY's legal representatives, heirs, successors, and assigns.

43. Additionally, pursuant to Rule 23(a) and (b)(3), Ms. Geske brings this action on behalf of a proposed subclass ("Illinois Class"), defined as follows:

> All consumers who purchased the Products in Illinois.
>
> Excluded from the Class are any of PNY's officers, directors, or employees; officers, directors, or employees of any entity in which PNY currently has or has had a controlling interest; and PNY's legal representatives, heirs, successors, and assigns.

44. Ms. Geske reserves the right to later alter the Multi-State Class and Illinois Class definitions in any manner allowed by law.

45. The Classes are ascertainable because the Class Members can be identified as a class by objective criteria: the purchase of PNY Power Banks during the Class Period. Notice can readily be provided to Class Members through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B).

46. At this time, Ms. Geske does not know the exact number of members of the Classes; however, based on PNY's sales, market research, and publicly available information Ms. Geske believes that the number of members of each of the Classes are so numerous that joinder of all members is impractical. PNY is a major player in the power bank market.

47. Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

   a. Whether the Products' capacity is equal to the mAh PNY claims;

   b. Whether PNY misrepresented the Products' mAh ratings;

9

    c.   Whether PNY's conduct was unfair and/or deceptive;

    d.   Whether PNY has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for PNY to retain the benefits conferred upon PNY by Ms. Geske and the Classes;

    e.   Whether PNY's conduct constitutes a breach of express warranty;

    f.   Whether PNY violated state consumer protection laws;

    g.   Whether Ms. Geske and the Classes have sustained damages and, if so, the proper measure thereof;

    h.   Whether Ms. Geske and the Classes are entitled to restitution, and if so, the proper measure thereof; and

    i.   Whether PNY should be enjoined from continuing to sell the Products as currently labeled.

48.   Ms. Geske's claims are typical of those of the Classes. Like all members of the Classes, Ms. Geske purchased a PNY Products bearing the claim that the Product's capacity is greater than it really is. And like all Class Members, Ms. Geske sustained damages from PNY's wrongful conduct. There is nothing unusual or distinct about Ms. Geske's claims compared with others who meet the class definitions.

49.   Ms. Geske will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex consumer products class actions. Ms. Geske has no interests which conflict with those of the Classes.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

51. No member of the Classes has a substantial interest in individually prosecuting a separate action. The damages for each individual member of the Classes likely will be relatively small compared with the costs of this complex litigation. Thus, absent a class mechanism, it would be virtually impossible for class members to obtain an effective remedy.

52. The prerequisites to maintaining a class action for injunctive or equitable relief are met, as PNY has acted or refused to act on grounds generally applicable to the members of the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

53. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for PNY. For example, one court might enjoin PNY from selling any Products, whereas another might require label changes. Additionally, individual actions could be dispositive of the interests of the members of the Classes even where certain members of the Classes are not parties to such actions.

54. PNY's conduct is generally applicable to the Classes as a whole and Ms. Geske seeks, inter alia, equitable remedies with respect to the Classes. As such, PNY's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### Count I: Violation of State Consumer Protection Statutes
### on Behalf of the Multi-State Class and Illinois Class

55. Ms. Geske incorporates by reference and re-alleges herein all paragraphs alleged above.

56. PNY is engaged in "trade" and "commerce" when it distributes the Products to retail stores for sale to consumers in Illinois and each of the other states listed below.

57. PNY's representations about the capacity of the Products were material to a reasonable consumer and were likely to affect consumer decisions and conduct.

58. Indeed, power bank capacity is *the* material factor in making a purchasing decision, because the function of the power bank is to provide power, and more is better.

59. PNY has used and employed unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

60. PNY's acts and practices were immoral, unethical, oppressive and unscrupulous.

61. PNY's conduct was substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have paid as high a price for the Products, or bought the products at all, but for PNY's false promotion of the Products' enhanced mAh capacity. But for its deceptive mAh representations, PNY could not have charged as high of a price as it was able to charge. Consumers thus have overpaid for the Products, and such injury is not outweighed by any countervailing benefits to consumers.

62. PNY's conduct does not benefit consumers. Because reasonable consumers are deceived by PNY's representations of the Products and they were injured as a result, consumers could not have reasonably avoided such injury.

63. PNY's practices constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least the following state consumer protection statutes:

    a. **Alaska Unfair Trade Practices and Consumer Protection Act**, Alaska Stat. § 45.50.471, *et seq*.

b. **Connecticut Unfair Trade Practices Act**, Conn. Gen. Stat. § 42-110a, *et seq.*

c. **Delaware Consumer Fraud Act, Del. Code Ann**. tit. 6, § 2511, *et seq.*

d. **District of Columbia Consumer Protection Procedures Act**, D.C. Code § 28-3901, *et seq.*

e. **Florida Deceptive and Unfair Trade Practices Act**, Fla. Stat. § 501.201, *et seq.*

f. **Hawaii Unfair and Deceptive Practices Act**, Hawaii Rev. Stat. § 480-1, *et seq.*

g. **Illinois Consumer Fraud and Deceptive Business Practices Act**, 815 ILCS § 505/1, *et seq.*

h. **Maine Unfair Trade Practices Act**, Me. Rev. Stat., tit. 5, § 205-A, *et seq.*

i. **Massachusetts Regulation of Business Practices for Consumers' Protection Act**, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq.*

j. **Michigan Consumer Protection Act**, Mich. Comp. Laws § 445.901 *et seq.*

k. **Missouri Merchandising Practices Act**, Mo. Rev. Stat. § 407.010, *et seq.*

l. **Nebraska Consumer Protection Act**, Neb. Rev. Stat. § 59-1601 *et seq.*

m. **New Hampshire Consumer Protection Act**, N.H. Rev. Stat. Ann. § 358-A:1. *et seq.*

n. **New Jersey Consumer Fraud Act**, N.J. Stat. Ann. § 56:8-1, *et seq.*

o. **New York Deceptive Acts and Practices Act**, N.Y. Gen. Bus. Law § 349, *et seq.*

p. **Rhode Island Unfair Trade Practices and Consumer Protection Act**, R.I. Gen. Laws § 6-13.1-1, *et seq.*

q. **Vermont Consumer Fraud Act**, Vt. Stat. Ann. tit. 9, § 2451, *et seq.*

r. **Washington Consumer Protection Act**, Wash. Rev. Code § 19.86.010, *et seq.*

s. **Wisconsin Deceptive Trade Practices Act**, Wis. Stat. § 100.18, *et seq.*

64. PNY's unfair and deceptive practices directly, foreseeably, and proximately caused Ms. Geske and the Classes to suffer ascertainable losses as described in Paragraph 62 above.

## Count II: Breach of Express Warranty
## on Behalf of the Multi-State Class and Illinois Class

65. Ms. Geske incorporates by reference and re-alleges herein all paragraphs alleged above.

13

66. PNY's representations regarding the Products' capacity constitute affirmations of fact.

67. PNY's representations that the Products' capacity are greater than they really are relates to the goods and became part of the basis of the bargain between PNY and purchasers of the Products.

68. PNY's representations—made in writing on the face of the packaging as to a material term of the transaction—constituted an express warranty.

69. Ms. Geske and members of the Classes purchased the Products, believing that they conformed to the express warranties pertaining to the Products' mAh capacity.

70. PNY breached its express warranties about the Products because the Products' actual capacity was lower than PNY represented.

71. As a result of PNY's breaches of express warranty, Ms. Geske and the other members of the Classes were damaged in the amount of the purchase price they paid for the Products, or the difference between the value of the Products accepted by Plaintiff and the putative class members and the value of the Products if they had the actual warranted capacity.

72. Among other things, Ms. Geske and members of the Classes did not receive the benefit of the bargain and have suffered other injuries as detailed above.

73. Moreover, had Ms. Geske and the members of the Classes known the true facts, they either would not have purchased the Products, or would not have been willing to pay the price PNY charged for the Products.

**Count III: Unjust Enrichment**
**on Behalf of the Multi-State Class and Illinois Class**

74. Ms. Geske incorporates by reference and re-alleges herein all paragraphs alleged above.

75. Ms. Geske and the members of the Classes conferred benefits on PNY by purchasing the Products and paying a greater price for them than they would have if PNY had truthfully represented the Products' capacity.

76. PNY has knowledge of such benefits.

77. PNY's representations that the capacity of the Products is greater than it actually is constitutes an affirmation of fact that is part of the basis of the bargain between PNY and purchasers of the Products.

78. PNY made its representations to induce Ms. Geske and the members of the Classes to purchase, purchase more of, or to pay more for the Products than they otherwise would have, and Ms. Geske and the members of the Classes relied on the representations in purchasing the Products.

79. PNY was enriched at the expense of Ms. Geske and the other members of the Classes, thereby creating a quasi-contractual obligation on PNY to restore those ill-gotten gains to Ms. Geske and the members of the Classes.

80. Under the circumstances, it would be against equity and good conscience to permit PNY to retain the ill-gotten benefits it has received from Ms. Geske and the other members of the Classes, in light of the fact that the Products were not what PNY purported them to be.

81. PNY must make restitution.

82. Ms. Geske and the Classes are entitled to recover damages and other appropriate relief.

## PRAYER FOR RELIEF

Ms. Geske demands judgment on behalf of herself and the Classes as follows:

a. An order certifying the proposed Classes; appointing Ms. Geske as the representative of the Classes; and appointing Ms. Geske's undersigned counsel as Class counsel for the Classes;

b. A declaration that PNY is financially responsible for notifying members of the Classes of the pendency of this suit;

c. An order requiring proper, complete, and accurate labeling of the Products;

d. Monetary damages, injunctive relief, and statutory damages in the maximum amount provided by law;

e. Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

f. An order awarding Ms. Geske and the other members of the Classes the reasonable costs and expenses of suit, including their attorneys' fees; and

g. Any further relief that the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues.

| | |
|---|---|
| Date: July 31, 2019 | Respectfully submitted, |
| | /s/ William F. Cash III |
| | William F. Cash III (Ill. Bar No. 6330856)<br>Matthew D. Schultz (*pro hac vice* motion forthcoming)<br>**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502<br>Phone: 850-435-7059<br>Fax: 850-435-7020<br>Email: bcash@levinlaw.com<br>Email: mschultz@levinlaw.com |
| | /s/ D. Greg Blankinship |
| | D. Greg Blankinship (*pro hac vice* motion forthcoming)<br>**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**<br>445 Hamilton Ave, Suite 605<br>White Plains, NY 10601<br>Phone: 914-298-3290<br>Email: gblankinship@fbfglaw.com |
| | *Attorneys for Cassandra Geske* |