**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CASSANDRA GESKE**, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>**PNY TECHNOLOGIES, INC.,**<br><br>        Defendant. | Case No. 1:19-cv-05170<br>Honorable Lindsay Jenkins |
| **DJAKARTA JACOBS**, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>**PNY TECHNOLOGIES, INC.,**<br><br>        Defendant. | Case No. 1:21-cv-03354<br>Honorable Lindsay Jenkins |

**DEFENDANT PNY TECHNOLOGIES, INC.'S**
**RESPONSE TO PLAINTIFFS' STATUS REPORT**

On May 3, 2023, this Court ordered the Parties to confer about the adequacy of each side's responses to outstanding discovery, then file separate status reports identifying the specific interrogatories and requests to produce with which the parties took issue. Dkt. 85. Despite this instruction, Plaintiffs declined PNY's request to meet and confer given their feeling that "we have conferred sufficiently enough." Dkt. 91-4, Email from W. Cash III to S. Suber (May 19, 2023, 11:15 AM). While Plaintiffs were well-informed about PNY's specific issues with Plaintiffs' discovery responses and had the opportunity to provide PNY with their position to be represented in PNY's status report (*see* Dkts. 91, 91-2, 91-3), PNY lacked knowledge of any of the specific interrogatories or requests to produce for which Plaintiffs intended to take issue in their respective report. *See* Dkt. 91-4, Email from S. Suber to W. Cash III, dated May 19, 2023, at 11:12 AM.

1

Seeing as Plaintiffs failed to adhere to the procedure prescribed by this Court, the Court should decline to consider any of the issues raised in Plaintiffs' status report (Dkt. 90). If the Court does consider these issues, however, PNY submits this response to put its position on the record in light of the Court's statement during the June 6, 2023 Status Hearing that its rulings on the discovery issues presented in the status reports will function as a motion to compel. Given that Plaintiffs did not represent PNY's positions in its report—they could not have, as the Parties never discussed these issues—PNY provides its positions below in addition to the supplemental responses that were served on Plaintiffs upon the entry of a Protective Order. **Ex. A.**

1. **Plaintiffs' complaint about PNY's privilege log.**

First, Plaintiffs argue that PNY has failed to serve a timely privilege log despite asserting privilege from discovery in its RFP and interrogatory responses. Dkt. 90 at 3–4. Plaintiffs further claim that PNY has failed to substantiate its privilege claims in violation of Rule 26(b)(5). *Id.* However, PNY has not withheld any documents on the basis of privilege. PNY had previously been unable to complete its production (or even seriously begin collection) because Plaintiffs refused to agree to the entry of the Model Confidentiality Order or an ESI protocol.

After the Court's entry of a Confidentiality Order on June 6, 2023 (Dkt. 93), PNY immediately supplemented its production that same day to include all documents it has collected so far. In making this production, PNY reiterated that no documents have been withheld on the basis of privilege. **Ex. B**, PNY Production Letter Vol. 2. PNY has not served a privilege log, or substantiated any claims, because there is nothing to log or substantiate. As PNY continues its collection and production of documents once the Court rules on proportionality, PNY will serve privilege logs if it determines that there are responsive and privileged documents that fall within the scope of PNY's privilege objections.

**2.   Plaintiffs' gripes about PNY's discovery responses being "subject to" objections.**

Next, Plaintiffs take issue with PNY's answers and responses served "subject to" objections.  According to Plaintiffs, the Rules require PNY to tender an objection *or* a response, but not both.  Dkt. 90 at 4–5.  This is incorrect. PNY provided specific responses to Plaintiffs' requests to the extent that it did not object.  Courts inside and out of this District recognize this type of response as within the bounds of the Federal Rules.  *See Zaborowski v. Sheriff of Cook Cnty.*, 2011 U.S. Dist. LEXIS 7284, at *7 (N.D. Ill. Jan. 26, 2011) ("Plaintiffs argue that [Defendant's] responses. . . are improper because there is nothing in the [Rules] that permits a party to object and then answer the interrogatory without waiving the objections . . . . [R]esponding to interrogatories in this manner is common practice in the Northern District of Illinois, and thus Plaintiffs' argument is without merit."); *O.L. v. City of El Monte*, 2021 U.S. Dist. LEXIS 58722, at *56 (C.D. Cal. Jan. 11, 2021) ("Plaintiff takes issue with Ruiz's inclusion of objections and answering 'subject to' those objections.  However, so long as the response itself is proper, objections asserted for the purpose of preserving the objection do not render a response improper and do not justify a request to strike such objections.").  Plaintiffs' objection "is without merit." *Zaborowski,* 2011 U.S. Dist. LEXIS 7284, at *7.

**3.   Plaintiffs' complaint about discovery into products Plaintiffs did not purchase.**

Plaintiffs also argue that Judge Seeger ruled on the scope of the products at issue in the litigation, and that PNY should be ordered to provide discovery into its entire product line (Dkt. 58).  Dkt. 90 at 6–7.  However, as Plaintiffs' own quoted language illustrates, Judge Seeger ruled that "Geske has *standing* to sue on behalf of a class of consumers who purchased PNY power banks that involve the same type of alleged misrepresentations."  Dkt. 90 at 7 (emphasis added).  This is separate and apart from a determination of whether discovery is necessary and proper for

class certification—not to mention proportionate to the needs of the case given that it centers around products PNY has not sold for years. The sweeping discovery Plaintiffs seek into PNY's entire product line is irrelevant and disproportional at this stage. *See Chow v. SentosaCare, LLC*, 2020 U.S. Dist. LEXIS 20770, 2020 WL 559704, at *3 (E.D.N.Y. Jan. 23, 2020) ("Although the discovery shall proceed on a class basis, it must be conducted with an eye to relevance and proportionality and bear some relationship to the claims of the named Plaintiff.").

**4. Plaintiffs claim that PNY's objections to timeframe are unreasonable.**

Next, Plaintiffs take issue with PNY's assertion that it will not search for or provide information in its responses that is older than January 1, 2018, as they claim this is unreasonably short and not a fair scope of discovery. Dkt. 90 at 7–8. Plaintiffs further note that the statute of limitations does not necessarily provide a cut-off date for discovery. *Id.*

This is a proportionality issue. As noted, PNY has repeatedly asked Plaintiffs to negotiate an ESI protocol, or to otherwise inform PNY of Plaintiffs' assessment of the value of this case, given that the products at-issue have not been produced or sold in several years. Plaintiffs' requests are unbounded by any time limitation. So long as the power bank model was sold, Plaintiffs seek any and all potentially relevant documents. This is unreasonable.

Without any sense of the value of this case, asking Defendant to complete an essentially unlimited search of its systems is unduly burdensome. As Plaintiffs' own cited authority acknowledges, "there are proper boundaries to discovery[.]" Dkt. 90 at 9 (citation omitted). Courts regularly impose temporal limits on discovery in class actions as is proportional to the needs of the case. *See, e.g., In re Microcrystalline Cellulose Antitrust Litig.*, 221 F.R.D. 428, 430 (E.D. Pa. 2004) ("While recognizing that a broad scope of discovery in this large class action is appropriate, I conclude that plaintiffs' request for sales data through the end of 2003 is unreasonable given the

minimal potential benefits of this information. I acknowledge that sales and pricing data after the end of the allegedly anticompetitive conduct are needed in order to prove liability and calculate damages with the chosen methodologies, but I am not convinced that plaintiffs require more than three years of such data to conduct a meaningful 'before and after' analysis.").

5. **Plaintiffs' disagreement about their vague, burdensome, and disproportional requests.**

Plaintiffs next claim that PNY asserts a boilerplate vagueness response to multiple RFPs, even though Plaintiffs feel that their terms are not vague. Dkt. 90 at 9–10. Relatedly, Plaintiffs take issue with PNY's "naked assertion" of burden, arguing that PNY's claims of burden and lack of proportionality are unsubstantiated. *Id.* at 11. While Plaintiffs claim these objections are "boilerplate," PNY's objections are specific to each of Plaintiffs' requests and definitions.

An example is illustrative. PNY objected to Plaintiffs' definition of "power bank" because its proposed definition includes "competitor's models" and "the concept of a power bank in the abstract." Dkt. 90-1 at 6. It is unclear to PNY exactly how it should purport to undertake collection that captures all documents responsive to the concept of "a power bank in the abstract." And PNY explained as much in its objection, explaining that such an "expansive definition places an undue burden on Defendant." *Id.* PNY has repeatedly asked for the negotiation of an ESI protocol to clarify the scope of what Plaintiffs are looking for in order to facilitate reasonable and proportionate collection. Plaintiffs refuse to engage in those discussions.

Plaintiffs argue in their status report that, for example, "RFP #1 seeks corporate org charts. This is not difficult to find and not disproportionate." Dkt. 90 at 11. Notwithstanding that this definition is tied to the definition of "power bank," to which PNY explains its vagueness and proportionality objections above—PNY provided a specific response to RFP #1. Despite lodging a number of objections, PNY stated that, "Upon the entry of a protective order and ESI protocol,

Defendant will conduct a reasonable search for [the requested documents] from January 1, 2018, to May 19, 2021, and, to the extent such documents exist, will produce responsive, non-privileged documents on a rolling basis." Dkt. 90-1 at 11. PNY has stood ready to engage in discovery pending reasonable safeguards and parameters that are standard in cases involving the search of complex commercial systems containing vast amounts of information, and where potentially sensitive documents may be implicated.

**6. Plaintiffs claim that PNY's terminology objections are unreasonable.**

PNY lays out one example of its objection to Plaintiffs' vague terminology (taking issue with the definition of "power bank") above. Plaintiffs do not understand how terms like "labeling," for another example, could be subject to serious dispute. Dkt. 90 at 18. But PNY's discovery responses clearly lay out the basis for its objection to such a term. Plaintiffs' definition of "labeling" is overbroad given that the definition encompasses "matter—in any form. . . associated with a power bank." Dkt. 91-1 at 7. Recall that "power bank" also encompasses "the concept" of a power bank "in the abstract." *Id.* at 6. So, while Plaintiffs argue these terms should not create any legitimate confusion, it is unclear exactly what Plaintiffs envision as being responsive to these requests which have a sweeping breadth. PNY again reiterates the need for the negotiation of an ESI protocol encompassing specific search terms that would avoid these issues altogether. Further, all "labeling" is not relevant to this case. This case is only about the ability of Defendant's products to provide power to electronic devices. Plaintiffs' sweeping requests for all "labeling" are not narrowly tailored to obtain relevant and admissible evidence for this case.

**7. Plaintiffs claim that PNY's "speaks for itself" objections are unreasonable.**

Plaintiffs assert that an answer by PNY that a document "speaks for itself" is not an answer and reflects gamesmanship by PNY. Dkt. 90 at 15–16. Plaintiffs' interrogatories make no sense.

For example, Plaintiffs ask whether "Ms. Geske's PNY Model AD5200" has "any meaning." Dkt. 90 at 15. Obviously, the AD5200 model means that the product is the AD5200 model; the product's packaging literally speaks for itself. Plaintiff is improperly trying to make Defendant *read additional words* into the stated representations on the packaging that were never represented to any consumer. To the extent that is what Plaintiffs are seeking, then Plaintiffs are calling for a narrative, which is far better suited to the conversational narrative of a deposition than the concise, written nature of an interrogatory answer. *See, e.g., Williams v. Sprint/United Mgmt. Co.,* 235 F.R.D. 494 (D. Kan. 2006); *Hilt v. SFC, Inc.,* 170 F.R.D. 182, 186-87 (D. Kan. 1997); *United States v. The Louisiana Clinic,* No. Civ. A. 99-1767, 2003 WL 21283944 at *6 (E.D .La. 2003) (rejecting a request to compel a response to an interrogatory seeking an explanation of why and how each produced document related to each claim, stating, "[R]elators should not have to try their case in the context of a response to interrogatories.")

**8. Plaintiffs take issue with PNY's response about "substantially similar" power banks.**

PNY objected to Interrogatory 2's request on the grounds that it impermissibly calls for a legal conclusion regarding "substantial similarity." Plaintiffs argue that PNY cannot object to this interrogatory on this basis because it asks "for an opinion or contention that relates to fact or the application of law to fact," which is permissible under Rule 33(a)(2). Dkt. 90 at 12. Plaintiffs argue that they seek to know whether PNY considers certain of its power banks to be substantially similar, or factually *distinct*. *Id.* PNY disagrees. While Plaintiffs frame this interrogatory as asking whether PNY considers certain of its power banks to be "factually distinct," by asking PNY which of its products it believes to not be "substantially similar," Plaintiffs ask PNY to draw a conclusion of law. As Plaintiffs acknowledge, "[s]ubstantial similarity is very relevant to class certification." *Id.* Substantial similarity is an important legal standard in this case.

7

It is improper to ask PNY to provide a conclusion as to whether this legal standard is met about the products at issue. *See Dale v. Correct Care Servs.*, 2020 U.S. Dist. LEXIS 223355, at *19 (W.D. Pa. Nov. 30, 2020) (interrogatories sought legal conclusions on issues in the case where defendant was asked to identify the "standard of care" as well as the "policy or custom" when delivering medical care). To do so would require disclosure of the mental impressions of PNY's counsel, who will not make Plaintiffs' case for them—which PNY products are substantially similar to those purchased by Plaintiffs, if any, will be the subject of substantial litigation.

9. **Plaintiffs' complaints about PNY's pricing information.**

Plaintiffs argue that Interrogatory 3 is not overly expensive and burdensome, as it is just a request for price values. Dkt. 90 at 13. Plaintiffs further state that the class definition in each action provides the "timeframe, geographical area, and product line." However, PNY agreed to produce this data, to the extent it exists, subject to a Confidentiality Order and ESI protocol. Despite Plaintiffs' allegations that PNY's conduct in discovery has been obstructive, *see id.* at 2, Plaintiffs repeatedly asserted that there was "no requirement" to agree to a Confidentiality Order or an ESI protocol, even in light of PNY's reasonable requests for such mechanisms to facilitate progress in discovery. *Id.* at 13. Now that an Order has been issued, PNY will revisit its response.

10. **Plaintiffs' complaint about their undefined "industry standards."**

Plaintiffs argue that compliance with industry standards is "a critical part of this litigation." Dkt. 90 at 14. As such, Plaintiffs take issue with PNY's objections to Interrogatory Nos. 4 and 5 and RFP No. 5. *Id.* PNY objected to these interrogatories for a host of reasons, namely vagueness and overbreadth. Dkt. 90-2 at 11–12. Plaintiffs provided no definition for what they are expecting PNY to search for in relation to "industry standards." They do not describe what "industry" they are focusing on—consumer electronics, generally, or all manufacturers of power banks. Nor do

they address the "standards"—written, unwritten, regulatory, etc. PNY cannot be expected to answer undefined terms that have no relation to this case. Plaintiffs never allege that they rely on industry standards or that the industry has adopted some standard. Nor do they allege that there is an industry norm. This Interrogatory is irrelevant legally because consumer confusion cannot be shown or refuted by pointing to industry standards. *See, e.g.*, *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 863 (N.D. Ill. 2021) (noting that "just because a term is widely used in the dental industry does not refute the probability that a reasonable *consumer* would be deceived by it"). Defendant's objections cannot be overruled merely because Plaintiffs disagree with them. They have provided no basis to justify this broad search into industry standards, which would be burdensome, unbounding, and which bears no relation to this case as pleaded.

**11. Plaintiffs' complaint about third parties' understanding of the products.**

Plaintiffs argue that PNY should respond to Interrogatories No. 12 and 13, as these seek to ascertain "how—and based on what—any consumer could determine a power bank's true output energy." Dkt. 90 at 15–16. PNY objected, among other reasons, because such responses call for speculation. Dkt. 90-2 at 21–24. It is literally impossible for PNY to be able to provide a written and narrative answer about the myriad of ways each and every consumer could determine a power bank's "true output energy"—whatever Plaintiffs mean by that because, again, "output energy" was never defined. The information of different consumers outside of PNY is not within PNY's possession, custody, or control, and this interrogatory is another example of the overbroad and unrealistic nature of Plaintiffs' approach to discovery in this case.

**12. Plaintiffs claim that PNY should produce other litigation complaints.**

For RFP 15, Plaintiffs argue there is no rule providing that publicly available documents need not be produced, and they conclude that PNY must have any litigation complaints easily

available "in its own files." Dkt. 90 at 17. Even if this were true, publicly available information is not discoverable. Several courts have found that there is no obligation to produce documents in the public record that are equally available to both parties. *See, e.g., Tdata Inc. v. Aircraft Tech. Publishers*, 2007 U.S. Dist. LEXIS 8880, at *2 (S.D. Ohio Feb. 5, 2007); *Raytheon Aircraft Corp. v. United States*, 2006 U.S. Dist. LEXIS 63363, at *7 (D. Kan. Sept. 5, 2006); *Krause v. Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc.*, 425 F. Supp. 2d 352, 374-75 (W.D.N.Y. 2006); *Dushkin Pub. Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335 (D.D.C.1991).

Further, to the extent that parties are expected to disclose public records in discovery, a failure to do so has a minimal impact on the opposing party. *See EEOC v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 787 (E.D. Ten. 2016) (finding failure to produce a document that was analogous to a public record to result in no prejudice and refusing to strike or impose sanctions).

**13. Plaintiffs claim that PNY should produce documents related to government inquiries.**

For RFP 17, Plaintiffs take issue with PNY's response that it would condition production on the entry of a Confidentiality Order and ESI protocol. Dkt. 90 at 18. Plaintiffs claim that it is not clear how a document from a third party is protectible as confidential. *Id.* Plaintiffs further state that these governmental inquiries could be subject to FOIA or other open-government public records laws. *Id.* As discussed above, *see supra* section 12, it is PNY's position that public information is not discoverable. To the extent that any such documents are subject to public records laws, Plaintiffs can obtain these documents themselves. But to the extent that any requested documents are not public, PNY has agreed to produce them subject to entry of a Confidentiality Order. Now that such a Confidentiality Order has been issued (Dkt. 93), PNY is prepared to revisit its discovery responses in light of that development, as it has already done by issuing a second round of production on June 6, 2023. *See* **Ex. B**.

10

Dated: June 22, 2023                        Respectfully submitted,

                                            */s/ Ronald Y. Rothstein*
                                            Ronald Y. Rothstein
                                            Sean H. Suber
                                            WINSTON & STRAWN LLP
                                            35 West Wacker Drive
                                            Chicago, IL 60601-9703
                                            Phone: (312) 558-5600
                                            Fax: (312) 558-5700
                                            RRothste@winston.com
                                            SSuber@winston.com

                                            *Attorneys for Defendant*
                                            *PNY Technologies, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 22nd day of June 2023, I caused a true and correct copy of the foregoing to be filed electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties and counsel of record.


/s/     *Ronald Y. Rothstein*