UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CASSANDRA GESKE**, on behalf of herself and all others similarly situated,<br><br> Plaintiff,<br><br>  *v.*<br><br>**PNY TECHNOLOGIES, INC.**,<br><br> Defendant. | No. 1:19-cv-5170<br><br>Judge Jenkins<br><br>Magistrate Judge Kim |
| **DJAKARTA JACOBS**, on behalf of herself and all others similarly situated,<br><br> Plaintiff,<br><br>  *v.*<br><br>**PNY TECHNOLOGIES, INC.**,<br><br> Defendant. | No. 1:21-cv-3354<br><br>Judge Jenkins<br><br>Magistrate Judge Kim |

**PLAINTIFFS' AMENDED STATUS REPORT REGARDING DISCOVERY**

> **What is being "amended" here?**
>
>  Plaintiffs filed a status report on May 26 (ECF 90), which was directed at PNY's discovery responses that were served on February 22.
>
>  Then PNY served supplemental responses as to Plaintiffs' requests for production on June 12, which was in connection with a handful of new documents that were served on June 6. The supplemental responses slightly amend PNY's written discovery response. Plaintiffs should have filed the supplemental responses with the Court and are doing that now.
>
>  Thus, PNY's new June 12 response on RFPs is attached here as Ex. A, its February 22 interrogatory response is attached as Ex. B, and a redline prepared by PNY's counsel on the RFP changes is attached as Ex. C. When we received the redline, PNY's counsel stated: "Please feel free to use, but with the caveat that we cannot guarantee that this is a redline of the original versus new word documents." That seems right, but we agree with the caveat, and are just passing it along for the Court's convenience.

1

> Plaintiffs are also making minor ==amendments== to statements in this report to bring it up to date. Our arguments remain the same.

The Court has ordered each party to file a status report identifying "each side's written discovery issues," along with the relevant discovery responses. This is Plaintiffs' report.

Because an in-person conversation often promotes cooperation, **Plaintiffs ask the Court to hold an in-person conference to discuss all parties' discovery issues.** The Plaintiffs can promise that they will be prepared and succinct in litigating all of these challenges. The Plaintiffs would like to leave that conference with marching orders to continue with discovery. Sometimes, a ruling on a yellow pad or with a red pen is more efficient than asking the Court to write a lengthy discovery order. Plaintiffs are open to whatever is the most efficient and productive.

A handshake across the table also often promotes lawyer comity and that would be a good thing here.

Discovery is not going well. As the Court will see in the attached discovery responses by PNY, although PNY served ~~73~~ 75 pages of legal paper in response to their discovery requests, *not a single one* of PNY's responses is a simple answer, unhedged with objections or half-answers or promises to answer some time in the future. The Plaintiffs did not treat PNY this way.

Moreover, the parties have had at least ~~one formal meet and confer conference~~ five phone or video calls directed at discovery and settlement, multiple one-on-one conversations, and written exchanges. At the end of this, PNY has not receded from a single one of its objections.

~~PNY's discovery responses were served in February. It is now May. The last three months have been frozen.~~

The Court should order PNY to go back to the drawing board, dispense with the obstructive conduct, and promptly serve proper responses.

(Note: The Court has ordered that it will not consider any party's "general objections." Therefore, the Plaintiffs are not raising comprehensive arguments about the general objections PNY asserted in response to Plaintiffs' interrogatories and requests for production. Nevertheless, they are also baseless and should be overruled.)

1. **Overdesignation of confidentiality.**
   **(All RFPs.)**

~~PNY and the Plaintiffs don't agree as to which party should bear the burden of moving for a protective order in the event that one is needed. Plaintiffs' concern has been that PNY will designate everything as confidential, even documents which have no basis for protection. This violates Rule 26(c) and also imposes pointless burdens on the parties and counsel to maintain the confidential basis of material.~~

~~Plaintiffs' concerns have now been borne out. PNY has produced a total of just *seven* pages of documents in response to Plaintiffs' document requests, and has withheld *everything else* as subject to a protective order. Documents PNY has withheld as apparently confidential include: test results showing whether PNY power banks can do what it says on the package (RFP #4) and internal discussions regarding how to make the statements on the package (RFP #6 and #7).~~

~~PNY has also withheld documents that it either distributed to the entire world or received from people outside of PNY. How can this be confidential? Such documents include: a list of the power banks that PNY has made (RFP #2); marketing materials PNY published to the world (RFP #11); informal complaints and formal lawsuits against PNY for the same subject matter as this action (RFP #14 and #15).~~

~~PNY's conduct is unreasonably obstructive, and the obstruction is representative of PNY's posture throughout the four-year pendency of this action.~~

3

~~The Court should order PNY to withdraw these baseless designations and get on with its document production. PNY is hiding behind a confidentiality order the parties do not agree on to withhold almost all of its written discovery, and that is wrong.~~

Based on the scant set of documents PNY served in June under the new protective order, it is too early to say that there is wholesale over-designation. However, most of the documents we received do seem to be public information. We will bring this challenge up with PNY under the protective order later.

### 2. PNY's privilege log is absent.
### (All RFPs; all interrogatories.)

PNY has never served a privilege log but asserts a privilege from discovery in countless RFP and interrogatory responses (as well as a "general objection" as to the same). This leaves Plaintiffs unable to ascertain what privileges are truly being invoked, and unable to challenge them. The Plaintiffs have asked for this log at least four times in writing and by phone.

PNY should be directed to serve a privilege log right now, or have all privileges deemed waived.

### 3. PNY asserts privileges without basis.
### (All RFPs; all interrogatories.)

In *every one* of its responses, PNY asserts that various privileges may attach to its responses, but does not substantiate them.

A good example is the so-called "third party confidentiality" privilege. For example, in RFP #2, Plaintiffs sought documents sufficient to establish the name, model number, and characteristics of PNY's power banks. In response, PNY objected that it would not produce "sensitive information belonging to a third party but entrusted to Defendant on conditions of

4

confidentiality and non-disclosure." Nowhere in the objection—or in any privilege log—does PNY substantiate this privilege assertion.

Given that all RFP #2 seeks is essentially PNY's product catalog, which would be public information, it is hard to see how any third-party privilege could attach. What is privileged about the names of the models PNY put out for sale? Nevertheless, the objection is there, and if not overruled, the Plaintiffs will have no way of knowing whether documents were withheld for this reason.

Given that PNY fails to substantiate all of these assertions, it has violated Rule 26(b)(5)'s requirement to "expressly make the claim" and back it up so that other parties can assess the claim.

The Court should order PNY to withdraw all such assertions.

4. **"Subject-to-but-without-waiving" objections and answers.
   (All RFPs; all interrogatories.)**

With *all* of PNY's responses, PNY serves many objections, stands on them, and then attempts to provide an answer "subject to" all of the objections. This is improper under the Rules. Each of PNY's responses is infected with the same problem. PNY should be directed to withdraw the objections and give clean answers.

If a request is objectionable, PNY can make objections. If the request is proper, PNY should answer it. Anything in between leaves Plaintiffs unable to rely on the answer, and leaves PNY with an escape hatch to deny its answer later, because PNY can say that it was served with a side dish of objections.

RFP #12 is a good example. PNY objects: (1) with "its General Objections," (2) to the use of terms, (3) to the timeframe of the request, (4) to proportionality, (5) that there is an undue burden on PNY, (6) that the request is overbroad, (7) that Plaintiffs seek discovery about products they did not purchase, (8) to relevance and "not reasonably calculated to lead to" relevant

discovery, (9) that Plaintiffs already have the documents they seek, (10) "to the extent it" seeks confidential or trade secret information, (11) that there might be a third party with a confidentiality interest, (12) to the extent it seeks attorney-client privileged information, attorney work-product privileged information, or "any other lawfully recognized privilege," and, for good measure, (13) that the request exceeds the bounds of the Rules. PNY then goes on to state that it "reserves the right to update" its response later.

And then, "subject to and without waiver of the foregoing objections," PNY offers a response. (The response is, by the way, a promise to produce documents during a timeframe that is less than requested, and to do so "on a rolling basis.")

If and when PNY ultimately produces its documents, that production would be "subject to and without waiving" these thirteen some objections above.

PNY's objections sorely violate the spirit and letter of the Rules, which require PNY to tender an objection *or* a response, but *not* both. The following authorities support the Plaintiffs:

- "Such an objection and answer preserves nothing and serves only to waste the time and resources of both the Parties and the Court. Further, such practice leaves the requesting Party uncertain as to whether the question has actually been fully answered or whether only a portion of the question has been answered." *Consumer Elec. Assoc. v. Compras and Buys Magazine, Inc.*, No. 08-21085-CIV, 2008 WL 4327253 at *3 (S.D. Fla. Sept. 18, 2008).

- "A party cannot object to an interrogatory or request for production, and, at the same time, answer the request for production in the same response. If a party does this, the objection is waived. There is no authority in the Federal Rules of Civil Procedure for reserving objections. Parties have a duty either to answer discovery or object to it." *Jones v. Forrest City Grocery, Inc.,* No. 4:06CV00944 (E.D. Ark. Mar. 16, 2007).

- Wright, Miller & Marcus, *Federal Practice and Procedure: Civil* § 2173: "A voluntary answer to an interrogatory is also a waiver of the objection."

- "[T]he practice of responding to interrogatories and documents requests 'subject to' and/or 'without waiving' objections is 'manifestly confusing (at best) and misleading

6

- (at worse), and has no basis at all in the Federal Rules of Civil Procedure.'" *Heller v. City of Dallas*, 303 F.R.D. 466, 486–87 (N.D. Tex. 2014).

- "Without this information, Plaintiff is left guessing as to whether Defendant has produced all documents, or only produced some documents and withheld others on the basis of privilege." *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-CV-2662, 2011 WL 939226, at *9 (D. Kan. Feb. 25, 2011).

PNY should be directed to withdraw all of the objections for any request where it serves an answer.

5. **Substantial similarity and "products Plaintiffs did not purchase."**
   **(All RFPs; all interrogatories.)**

PNY made a large line of power banks. There are at least a dozen models. (*Jacobs* Compl. ¶ 11.) These models are materially the same in the way that matters for this case: they all are power banks and they are labeled with an mAh rating. *Id*. The Plaintiffs bring class actions encompassing *all* of these PNY power banks. (*Geske* Am. Compl. ¶¶ 8, 54.)

But PNY objects to producing any discovery other than the two specific models that the Plaintiffs purchased. In the case of Ms. Geske, that's the PNY PowerPack 5200. (*Geske* Am. Compl. ¶ 13.) For Ms. Jacobs, she purchased the PNY PowerPack 2600. (*Jacobs* Compl. ¶ 17.) A typical objection of PNY's is in RFP #2:

> Defendant further objects to the request on the grounds that it is overbroad because Plaintiffs did not purchase any products other than those identified in their Complaints, and therefore this request is unduly burdensome, seeks information that is not relevant to any adequately pleaded claim or any defense raised in this action, and is not reasonably calculated to lead to the discovery of admissible evidence insofar as it relates to products that Plaintiffs did not purchase. The scope of the products at issue in this suit will be determined by the Court.

PNY's objection is meritless. "The scope of products at issue" *has already been* "determined by the Court." PNY lost.

7

Judge Seeger wrote: "Geske has standing to sue on behalf of a class of consumers who purchased PNY power banks that involve the same type of alleged misrepresentations." (*Geske* order denying PNY's motion to dismiss, ECF No. 58 at 16, *see also* 14–17.) Judge Seeger offers four pages of useful reasoning why PNY should be required to provide discovery as to all of its power banks, and the Plaintiffs need not retrace those steps here.

PNY's refusal to provide that discovery now—in the face of a specific order on this point—is more evidence of its obstructive misconduct.

PNY should be ordered to answer any request targeted at its entire product line with a full answer, and not limit its answers to two specific models.

6. **Unreasonable objections to timeframe.
(RFPs #1, 2, 4, 8, 9, 10, 11, 12, 13, 17, 20; all interrogatories.)**

PNY asserts, in many RFPs, that it will limit its cutoff to documents created after January 1, 2018. Similarly, with respect to interrogatory responses, PNY has a general objection that says "Defendant will not search for or provide any information in its responses which is older than January 1, 2018."

This is unreasonably short and is not a fair scope of discovery.

Example: RFP #1 sought organizational charts for the people who labeled, marketed, designed, tested, and manufactured PNY power banks. PNY responded that it would produce org charts dated only "from January 1, 2018, to May 19, 2021."

January 1, 2018 is not the beginning of the PNY power bank story. Ms. Geske purchased her power bank in Elgin on **February 26, 2018**.

A product, particularly a highly engineered product like this one, that is available for retail sale in February 2018 is the result of months or perhaps years of work by the company that

8

produced it. Given the shipping time from Asia, it is very likely Ms. Geske's product was made in 2017. Yet PNY would start the clock *after* the product was made.

When searching for documents that relate to the design, marketing, sales, and service issues of that product, a company may have to go back to the beginning of time. Key decisions about how to design or market a product line may have been made at the very beginning of a project—well before the product was launched.

PNY should be ordered to produce the documents that are actually responsive to these requests without its unreasonable time scope. If PNY has a good reason to limit the timeframe, the Plaintiffs will be receptive to discussion—preferably, before the Court and with PNY bringing hard evidence to support the limitation.

Finally, PNY made a similar time scope argument in its "general objection" number 8 (which the Court has indicated is automatically overruled). PNY's argument there is that the documents might be "outside the statute of limitations." The following authority disposes of that argument:

- "First, the statute of limitations does not necessarily provide a cut-off date for discovery. The scope of discovery is defined by relevance. Information need not be admissible to be relevant. Fed. R. Civ. P. 26(b)(1). While there are proper boundaries to discovery, discovery as to events outside the statute of limitations is appropriate where the information is 'otherwise relevant to issues in the case.'" *Beesley v. Int'l Paper Co.*, No. 06-703-DRH (S.D. Ill. Jan. 24, 2008).

7. **Objections to vagueness.**
   **(RFP #3, 5, 6, 7, 8, 9, 10, 14, 16, 20, 21, 22.)**

PNY asserted, as to this set of requests, that Plaintiffs' discovery requests were vague:

- RFP #3: "Design specifications and drawings, including parts lists, for each PNY **power bank.**"

- **RFP #5:** "All documents showing that PNY relied on any industry standards, trade association recommendations, competitors' trade practices, or similar factors outside

- of PNY, when PNY determined to publish **stated capacity** rather than **output energy** with respect to any **power bank**."

- RFP #6: "Any document, including a communication, where PNY considered changing its **charging statements**, or the basis for those statements, even if the change was not actually made."

- RFP #7: "Any document, including a communication, where PNY considered changing its **stated capacity**, or the basis for representing that value to consumers, even if the change was not actually made."

- RFP #8: "All documents, including reports from focus groups, consumer surveys, or other market research, concerning consumers' understanding or confusion about **stated capacity** or **charging statements**, with respect to any PNY **power bank**."

- RFP #9: "All documents, including reports from focus groups, consumer surveys, or other market research, concerning the value consumers place on **output energy** or **stated capacity**."

- RFP #10: "All documents concerning consumer market research—including conjoint analyses or willingness-to-pay analyses—conducted by PNY or anyone on PNY's behalf, relating to PNY **power banks**, including—for each study or research project—documents concerning" a list of subjects.

- RFP #14: "All complaints you have received from anyone concerning any **power bank's stated capacity, charging statements,** or **output energy.**"

- **RFP #16: "**All documents that describe or reflect PNY's response to each of the complaints in the previous document request. Include both internal communications and memos within PNY as well as any response communicated back to the complainant externally."

- RFP #20: "Documents sufficient to identify all retailers who sold PNY's **power banks** in the multi-state area in the proposed class, including their names, locations, and sales volume since January 1, 2018, broken down by model of each **power bank**."

- RFP #21: "All documents you contend are relevant to either Plaintiff's suitability to serve as a class representative."

- RFP #22: "All documents in your possession that refer to lawsuits against competitors over their **power banks** and the representations made on their **labeling,** including PNY's own plans and positions relating to **charging statements** and **stated capacity**."

In many cases PNY's response was: "Subject to and without waiver of the foregoing

objections, Defendant responds as follows: Defendant is willing to meet and confer with Plaintiffs

10

about the scope of this vague request, but Defendant will not search for or produce documents under this vague request, as drafted."

In other requests, such as RFP #9, PNY just asserted that part of a request was "undefined and vague."

The parties conferred and were not able to resolve the objection. The Plaintiffs see nothing vague about these requests.

The Court should overrule these objections and require PNY to produce responsive documents.

8. **Burdensomeness objections and proportionality objections. (RFP #1–20, 22; interrogatories #1, #2, #3, #5, #6, #9, #10, #11, #12, #13, #14, #15.)**

In places too numerous to detail, PNY argues that responding to discovery would be burdensome or out of proportion to the needs of the case. Some of these objections are founded on the incorrect argument that the Court will not permit discovery into models other than those purchased by the Plaintiffs. That argument is dealt with in section 5 of this filing above.

Other objections are naked assertions of burden or disproportionality. These should be overruled for the following reasons:

First, a naked assertion of burden, without a showing as to the scope of the burden, is insufficient. "On the contrary, the party resisting the discovery 'must show specifically . . . how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive'." *Joseph v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). This simply isn't done here. For example, PNY might have argued that the data is sitting in unorganized paper records at a distant warehouse. PNY gives no information about its "burden." Plaintiffs believe PNY simply hasn't done any work to find out.

11

Second, Plaintiffs' requests are not burdensome. Nor are they disproportionate—in light of the fact that this is a multi-million-dollar pair of consumer class actions. To give several examples out of the set identified:

- RFP #1 seeks corporate org charts. This is not difficult to find and not disproportionate.

- RFP #2 seeks documents that would list out the models that PNY has sold. If PNY cannot even figure out which models it has sold—if that is a burden—then no amount of discovery is reasonable.

- RFP #4 seeks test documents and test results from PNY power banks. This information is central to Plaintiffs' claims. And any prudent manufacturer would test its products. If PNY does not have test results, that could mean it marketed these power banks without knowing their real characteristics. The need for this information is clear. This is not disproportionate.

- RFP #8 seeks focus group reports and other market research that *specifically discusses* consumer understanding about the labeling claims and product characteristics at issue in these actions. PNY again asserts burden and disproportionality. How could that be possible?

And so on; Plaintiffs will not belabor the point. Every assertion like this reflects obstruction on PNY's part. Indeed, it seems clear from the meet and confer sessions that PNY had not even looked for documents or information which could be used to answer these requests.

All of PNY's objections on these bases should be overruled because they are not justified or substantiated by any facts.

9. **Substantial similarity.**
   **(Interrogatory #2.)**

A core issue in this class action is whether PNY's products are sufficiently similar to those which the Plaintiffs purchased, so that the Plaintiffs can carry a class composed of PNY's entire product line. Substantial similarity is very relevant to class certification.

Interrogatory #1 asks PNY to identify all power banks it has put out since January 1, 2018. Interrogatory #2 then asks:

> Identify any **power bank** that you described in interrogatory no. 1, which is *not* substantially similar to all other PNY power banks, with respect to either (1) basic internal design, (2) basis for making **charging statements**, or (3) the fact that output energy and stated capacity are different.

PNY served over a page of boilerplate objections, and then answered: "Defendant will not provide a response to this interrogatory, as it impermissibly calls for a legal conclusion regarding 'substantial similarity.'"

But that is no basis for objection. Rule 33(a)(2) provides that an "interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact," and goes on to state that that the Court has the power to defer answering it until later—but not to bar such an interrogatory entirely.

Learning whether PNY considers its power banks substantially similar, or factually *distinct*, is directly related to class identity and class certification matters. And PNY—the manufacturer, designer, and marketer of its products—is in possession of greater information on this topic than the Plaintiffs.

PNY should be ordered to answer interrogatory #2.

### 10. Pricing information in PNY's possession. (Interrogatory #3.)

Plaintiffs seek, in interrogatory #3, information about average retail price and average wholesale price of each PNY power bank. This information is necessary for several reasons: classwide damages; calculating the price premium from different sizes of batteries; computing PNY's ill-gotten revenues; and more.

PNY objects that there is no "timeframe, geographical area, or product line" specified. Plaintiffs believe this is information is all provided by the class definition in each action.

PNY complains that finding this data will be "expensive and burdensome." Given that these are just price values, this is hard to understand, and PNY does not substantiate it.

Finally, PNY states that "if" records exist, then PNY will produce them if a protective order is entered into and if an ESI protocol is agreed upon. There is no requirement for Plaintiffs to agree to either of these orders.

PNY does not answer the interrogatory at all. PNY should be directed to do so.

11. **Industry standards.**
    **(Interrogatory #4 and #5; RFP #5.)**

Interrogatory #4 asked: "Did PNY rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of PNY, when PNY determined to publish any **power bank's stated capacity** in any **labeling** rather than its **output energy?** If so, state the name of the outside factor, the name of the PNY person relying on it, and the date of the reliance."

Interrogatory #5 asked: "Did PNY rely on any industry standards, industry trade association recommendations, competitors' trade practices, or similar factors outside of PNY, when PNY determined to publish **charging statements** in any **labeling**? If so, state the name of the outside factor, the name of the PNY person relying on it, and the date of the reliance."

With the interrogatories, PNY asserted multiple boilerplate objections such as overbreadth, vagueness, undefined terms, undue burden, third-party confidentiality, attorney-client privilege, etc., etc. After asserting all of those, PNY answers: "Defendant responds that it will not respond to these interrogatories due to its objections to the premise and vagueness of these interrogatories."

RFP #5 similarly sought documents showing that PNY relied on "industry standards, trade association recommendations, competitors' trade practices, or similar factors outside of PNY," when PNY labeled the power banks as it did. PNY asserted similar objections, including quibbling with the phrase "similar factors."

All of PNY's objections should be overruled.

Compliance, or lack thereof, with industry standards is a critical part of this litigation. The Plaintiffs want to know if PNY internally determined that it should follow suit with some other manufacturer, or some general industry course of conduct, when it labeled its power banks with their theoretical maximum capacity rather than their actual available output. Judge Seeger held that this central theory of the case—mislabeling and benefiting from consumer confusion—withstood PNY's motion to dismiss.

This discovery will lead to further admissible evidence. If PNY argues that its labeling is in line with the XYZ Electronics Industry Guidelines, Plaintiffs are entitled to learn which PNY employees relied on that guidance, and how. Plaintiffs might then conduct an investigation or discovery into the XYZ Guidelines (if they exist).

Conversely, if the Plaintiffs learn now that PNY has no basis to rely on any outside guidelines now, then they will know that PNY's marketing choices are entirely its own, and PNY has no backup for its policies.

Reliance on industry standards is also relevant here where PNY argues that "reasonable consumers" know how to read power bank labels. (PNY's Mot. to Dismiss at 16, *Geske* ECF No. 43.) The presence or absence of industry standards governing this labeling decision would be directly relevant to any argument PNY might make that "all companies label their batteries the same way"—by practice, trade association guidance, government regulation, or any other reason.

15

PNY should be required to answer these requests without objections.

12. **"Speaks for itself" objections.**
    **(Interrogatory #8, #9, #10, #11, #12, #13.)**

Several of PNY's interrogatory answers—when the boilerplate objections are stripped away—reduce down to an assertion that a document "speaks for itself." This is no answer at all, and it reflects gamesmanship on PNY's part.

For example, interrogatory #8 refers to "Ms. Geske's PNY model AD5200," which "bears the name '5200 PowerPack.'" Then it asks: "Does 5200 have any meaning, such as stated capacity?" The interrogatory asks about the *number*, not any particular document.

PNY's answer, however, refers to a document: "Defendant states that the packaging of Ms. Geske's model AD5200 speaks for itself."

Ms. Geske is entitled to a real answer, and this simply is not any answer at all.

Similarly, interrogatory #9 asks where, in the labeling, PNY makes the disclosure that a given value like 5200 "reflects a theoretical maximum mAh capacity, not the actual output energy available." PNY's attorneys argued this in their motions to dismiss, so PNY itself should have no problem answering the same. But PNY's answer was, again, "Defendant states that the packaging of PNY PowerPacks speaks for itself."

PNY gave further non-answers to interrogatories #10, #11, #12, and #13.

PNY should be directed to answer all of these with full, real answers.

13. **Whether consumers can compute true product characteristics.**
    **(Interrogatories #12 and #13.)**

PNY's responses to interrogatories #12 and #13 contain the "speaks for itself" falsity identified in the category above. But they also contain an additional assertion that is objectionable.

These two interrogatories are:

16

>Interrogatory #12: Could a consumer compute, based on **charging statements** and/or **stated capacity** that PNY makes available to the consumer, what a **power bank's** true **output energy** is? How?
>
>Interrogatory #13: Could a consumer compute, based on any information on the **label**, what a **power bank**'s true **output energy** is? How?

PNY's answer to both included this sentence: "Defendant also states that asking whether 'a consumer [could] compute' something impermissibly calls for speculation."

The Plaintiffs disagree. What these interrogatories seek to ascertain is how—and based on what—any consumer could determine a power bank's true output energy.

In its motion to dismiss *Geske*, PNY argued that the packaging "clearly" states the theoretical maximum capacity, not its true output energy. PNY argued to this Court:

>Indeed, looking at the product itself, from an image taken from Plaintiff's Amended Complaint, it is clear that the product specifically says the PNY 5200mAh PowerPack has a "capacity" of 5200mAh—not that it delivers that amount: . . .
>
>Nothing on the PowerPack 5200 packaging or on the product, itself, says that the product can "transfer" 5200 mAh. See Ex. ECF No. 36-1. When a power bank is charging an iPhone, for example, some of the charge is lost in the transfer of power. In simple terms, it takes energy to transfer energy. "Reasonable consumers" understand this.

(ECF No. 43 at 16.)

Thus, PNY has argued that "reasonable consumers understand" that its values on the product (on the inside of the packaging, by the way) don't inform those consumers about the actual product performance. Plaintiffs are now asking PNY to show how any consumer could learn the true product performance.

Plaintiffs are entitled to an answer to these interrogatories. If—as Plaintiffs suspect—the true answer is that *nothing* in PNY's labeling informs Plaintiffs as to true product performance, PNY should state as much.

17

14. **Other litigation complaints. (RFP #15.)**

RFP #15 sought "All litigation complaints filed against PNY anywhere in the world" that relate to the battery mislabeling allegations in *Geske* and *Jacobs*. In one of the few burdensomeness objections actually substantiated with argument, PNY responds to say that the request for litigation complaints worldwide "imposes an undue burden on Defendant because Plaintiffs only reside in Illinois and California, making claims filed elsewhere irrelevant."

PNY ultimately refuses to produce any documents, stating: "Any Compliant is publicly available and therefore equally available to Plaintiffs. Defendant will not search for or produce this information."

This is not the law. First of all, there is no rule that says if a document is publicly available, an opposing party need not produce it. None. Moreover, PNY would have the Plaintiffs search through the dockets of thousands of individual state courts for documents that it would have in its own files. (And PNY complains of burdensomeness . . .)

Second, PNY's objection that only lawsuits from Illinois or California are relevant is wrong. The Plaintiffs seek to represent classes composed of people from other states, so even if PNY's logic is correct, those aren't the facts.

Third, PNY sold the same exact power banks nationwide—and complaints made to PNY from anywhere in the USA are equally relevant to these actions. So would complaints made to PNY overseas if related to the same models.

15. **Government inquiries. (RFP #17.)**

In this request, Plaintiffs seek documents related to inquiries from the Federal Trade Commission, state attorneys general, and the like.

PNY conditions its response on entry of a protective order and an ESI protocol. The parties have agreed to neither. It is not at all clear how a document from a third party—which could be subject to FOIA or open-government public records laws—is protectible as confidential.

PNY should be required to produce these documents now.

### 16. PNY's objections to terminology.
### (All RFPs; all interrogatories.)

Throughout its responses, PNY objects to Plaintiffs' defined terms like "power bank," "labeling," and "output energy." These are definitions for basic concepts, not subject to serious dispute. There should be no confusion, on the part of PNY, a power bank manufacturer, as to what constitutes a "power bank." Nor did PNY have any problem understanding such terms when they appeared in the Complaints.

In the parties' meet-and-confer sessions, PNY has not been able to explain any legitimate confusion about these terms.

PNY's objections to discovery requests, based on these terms, should be overruled.

Date: August 3, 2023                                   Respectfully submitted,


                                                       /s/ William F. Cash III
                                                       William F. Cash III (Ill. Bar No. 6330856)
                                                       Matthew D. Schultz (admitted *pro hac vice*)
                                                       K. Scott Warrick
                                                       **LEVIN, PAPANTONIO, RAFFERTY,
                                                       PROCTOR, BUCHANAN, O'BRIEN,
                                                       BARR, & MOUGEY, P.A.**
                                                       316 South Baylen Street, Suite 600
                                                       Pensacola, FL 32502
                                                       Phone: 850-435-7059
                                                       Email: bcash@levinlaw.com

                                                       Greg Blankinship (admitted pro hac vice)
                                                       Bradley F. Silverman (admitted pro hac vice)
                                                       **FINKELSTEIN, BLANKINSHIP,
                                                       FREI-PEARSON & GARBER, LLP**
                                                       1 North Broadway
                                                       White Plains, NY 10601
                                                       Phone: 914-298-3290
                                                       Email: dblankinship@fbfglaw.com
                                                       Email: bsilverman@fbfglaw.com

                                                       *Attorneys for Plaintiffs*